## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| TERESA KLAUS, | : | Case No. 3:22-cv-2094 |
| | : | |
| Plaintiffs, | : | Hon. |
| | : | |
| -vs- | : | |
| | : | |
| THE LITIGATION PRACTICE GROUP PC, | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT AND REQUEST FOR DECLARATORY RELIEF AND JURY DEMAND
### Introduction

1. This is an action for damages brought by a consumer against Defendant for violations of the Debt Adjustment Companies Act, R.C. § 4710.01, et seq. ("DACA"), the Ohio Consumer Sales Practices Act, R.C. § 1345.01, et seq. ("OCSPA"), the Ohio Credit Services Organization Act R.C. §4712.01, et seq. ("OCSOA"), the Credit Repair Organizations Act, 15 U.S.C. §§ 1679-1679j ("CROA"), the Telemarketing Sales Rule 16 C.F.R. § 310.2 ("TSR"), Breach of Contract, and Common Law Fraud, all of which prohibit persons engaged in debt adjusting and credit repair from engaging in abusive, deceptive, and unfair practices.

### Parties

2. Plaintiff, TERESA KLAUS, is a consumer residing at 707 Jackson St., Delphos, Ohio 45833.

3. Upon information and belief, Defendant THE LITIGATION PRACTICE GROUP PC (hereinafter "LPG") is a California debt settlement and debt validation company operating from an address at 17542 E 17th Street, Ste 100, Tustin, CA 92780, and doing

business in the state of Ohio.

4. Defendant regularly engages in business in Ohio and directed at residents of Ohio and have otherwise availed themselves of the Ohio marketplace and secured the benefits of that marketplace. Such conduct included, among other things; holding itself out as debt settlement company providing services to Ohio residents; directing business solicitations into the State of Ohio, directed at indebted Ohio residents, seeking participation in Defendants' debt settlement, credit repair and debt elimination programs; contracting in Ohio with Ohio consumers for various services, including debt validation; offering to perform and/or performing activities for Ohio residents including debt settlement, credit repair and debt elimination functions.

**Statement of Facts**

5. On or before, June 9, 2021, Plaintiffs contacted LPG to discuss possible debt elimination services.

6. Plaintiff had several telephone conversations wherein she was led to believe she was retaining Defendant for debt adjustment services which necessarily included credit repair and debt elimination.

7. Based upon the representations made by LPG in the phone calls, Plaintiff believed by enrolling in the program, she could eliminate their overall debt by disputing the validity of the debts under the statutes of the Consumer Financial Protection Bureau and the Fair Debt Collection Practices Act.

8. A representative of LPG sent Plaintiffs an Agreement to review and sign; the representative also instructed Plaintiffs they had a right to withhold payments to their creditors while the accounts were in dispute.

9. The written agreement that Plaintiff signed with the Defendants is attached hereto as Exhibit "A".

2

10. On or about June 28, 2021, Plaintiff began paying Defendant $329.53 a month for its services.

11. Defendants charged substantial up-front fees; Plaintiff's credit scores severely reduced pursuant to her participation in the program; Plaintiff's credit scores will not recover in the near future.

12. Enrolling in LPG's program resulted in no reduction to Plaintiff's total debt owed as agreed, in fact, Plaintiff's total indebtedness increased substantially due to interest and fees.

13. Shortly after enrolling in Defendants' program, a lawsuit was filed against Plaintiff by one of her creditors.

14. Enrolling in LPG's program resulted in no payments being made to Plaintiff's creditors.

15. Upon information and belief, the only services provided to Plaintiff from Defendant was the mailing of verification packets to Plaintiff's creditors.

16. While Defendant represented mailing these packets would eliminate Plaintiff's debt, it knew this representation was false, and the mailings would have no legal effect with regard to reducing Plaintiff's debt.

17. Defendant made various misrepresentations or non-disclosures in an effort to induce Plaintiff to enter into the illegal agreement including, but not limited to:

- Unsubstantiated claims of savings; Defendant represented to Plaintiff that the program would eliminate her total debt; however, Defendant does not have a record of accomplishment to support that statement.

- Misleading or failing to adequately inform consumers, including Plaintiff, that they will be subject to continued collection efforts, including lawsuits,

3

        and that their account balances will increase due to extended nonpayment under the program.

- Defendant represented that the majority of consumers which retain it go on to complete the program thereby becoming debt free; however, a high percentage of consumers who attempt Defendant's debt verification program do not become debt free as a result of its services.

- Defendant accepted money from Plaintiff for the purpose of eliminating all debts on the program for less than the amount owed knowing there was a substantial likelihood that they could not provide the services as promised. Defendant knew its business model was legally unsound and nonsensical.

18. Based upon the misrepresentations of the LPG representative, Plaintiff agreed to enter into a contract for the debt relief services of LPG.

19. Plaintiff agreed to pay specified fees which, unknown to Plaintiff, were illegal due to the substantial amount of the fees and requirement of payment up front.

20. LPG withdrew $2,965.77 in fees from Plaintiff over a period of approximately one year.

21. The Telemarketing Sales Rule prohibits debt relief companies from charging up-front fees prior to settling accounts because, among other reasons, such a business model is designed to fail from the beginning. TSR, 16 C.F.R. § 310.4 (a)(5)(i)

22. Further, given the lengthy period of time creditors do not receive money owed, (oftentimes without any contact with the debt relief companies or the debtor), the creditor will often opt to bring a lawsuit for money owed.

23. Defendant advised Plaintiff to quit paying her debts knowing the debt would

4

continue to accumulate interest, over the limit fees, and late fees.

24. Defendant represented they would attempt to eliminate Plaintiff's total debt balance by providing a debt elimination program by sending validation documentation to the third-party collectors collecting on the debts in the program hoping debt collection would cease.

25. While disclaiming that it is practicing law, the vast majority of services LPG agreed to provide Plaintiff were in fact legal services. The Agreement is a legal fee agreement whereby LPG agreed to practice law and provide legal services in exchange for money.

26. Defendant's actions did not reduce Plaintiff total debt balance, and in fact, Plaintiff owes more money and have been sued on numerous accounts enrolled in the Defendant's debt elimination program.

## Count One:
## (Violations of the Ohio Consumer Sales Practices Act and Debt Adjustment Companies Act)

27. Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

28. The activity described in all previous paragraphs is a "consumer transaction" as defined by R.C. § 1345.01(A). Defendant solicited and retained Plaintiff to perform debt adjustment services for a fee.

29. Plaintiff's debts at issue were incurred for personal, family and/or household use.

30. Defendant is a "supplier" as that term is defined in R.C. § 1345.01(C), since Defendant engaged in the business of effecting "consumer transactions", either directly or indirectly, by operating a debt adjustments service for consumers in Ohio for purposes that are primarily for personal, family or household within the meaning specified in R.C. § 1345.01(A).

31. Defendant is a "person" as defined by the DACA, R.C. § 4710.01(A) engaged in

5

the act of "debt adjusting" as defined by the DACA, R.C. § 4710.01(B), and a "supplier" as defined by the OCSPA, R.C. § 1345.01(C), since Defendant was engaged in the business of debt adjusting, budget counseling, debt management, or debt pooling services, or holding oneself out, by words of similar import, as providing services to debtors in the management of their debt to a consumer in the State of Ohio for purposes that were primarily for personal, family or household use.

32. Plaintiff is a "consumer" as defined by the OCSPA, R.C. § 1345.01(D).

33. Defendant charged and accepted fees or contributions in excess of what are reasonable fees or contributions, in violation of R.C. §§ 4710.02(A)(3), 4710.02(B)(1-3) and 4710.02(F)(1). Defendant knew that the debt settlement program's fees exceeded the amount permitted by R.C. § 4710.02(B).

34. Upon information and belief, Defendant failed to arrange for and undergo an audit conducted by an independent, third party, certified public accountant of the person's business and then file the audit and opinion with the consumer protections division of the attorney general in violation of R.C. §§ 4710.02(D)(1-2) and 4710.02(F)(2).

35. Upon information and belief, Defendant failed to obtain and maintain insurance coverage not less than $100,000.00 for employee dishonesty, forgery, and fraud in violation of R.C. §§ 4710.02(E)(1-2) and 4710.02(F)(2).

36. Defendant's transactions failed to include the notices, statements, and cancellation forms as defined by R.C. §§ 4710.05(A) and (B). Such failure is a violation of R.C. § 1345.02(A) of the OCSPA. Defendant committed unfair, deceptive and unconscionable acts or practices in violation of R.C. §§ 1345.02(A) and/or 1345.03(A) of the Consumer Sales Practices Act including:

- Defendant operated a debt settlement company in the State of Ohio without complying with applicable Ohio law, namely, R.C. § 4710, et seq.

- Defendant charged an excessive fee for debt adjusting and failed to provide the service pursuant to the Failure to Deliver Rule, O.A.C. § 109:4-3-09(A).

- Defendant is an out of state corporations, failed to register with the Ohio Secretary of State prior to doing business in Ohio as required by R.C. § 1703.03.

- Defendant made false or misleading statements to induce a purchaser to pay for services.

- Defendant engaged in debt adjustment activities, including holding out that it could affect the adjustment, compromise, or discharge of any account, note, or other indebtedness of consumers who sign up for its services, without complying with R.C. §§ 4710.02(A) and (B), specifically that Defendant charged fees in excess of those permitted by the Ohio Debt Adjusters Act.

- Defendant violated Ohio Adm. Code § 109:4-3-09(A) by accepting money from consumers for goods or services ordered by mail, telephone, or otherwise and then failed to make full delivery or make a full refund as promised.

- Defendant had knowledge of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction.

- Defendant required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the

7

supplier.

37. Such acts and practices have been previously determined by Ohio courts to violate the Consumer Sales Practices Act, R.C. § 1345.01 et seq.

*38.* Defendant committed said violation after such decisions were available for public inspection pursuant to R.C. § 1345.05(A)(3). *State ex rel. Petro v. Debticated Consumer Counseling, Inc.* (Lucas Co. C.P. 2003), Case No. CIO 2002 4856, (PIF# 2173); *State of Ohio ex rel. Cordray v. United Law Group, Inc.* (Franklin Co. C.P. 2010), Case No. 10 CVH 021567, (PIF# 2874); *State of Ohio, ex rel. Cordray v. Brotherton* (Greene Co. C.P. 2010), Case No. 2009 CV 0709, (PIF# 2831); *In Re Nationwide Debt Solution, Inc.* (2010), Docket No. 384784 (PIF# 2878); *In Re Budulator Corporation, Inc.* (2010), Docket No. 388509 (PIF# 2876); *State of Ohio ex rel. Rogers v. Richard Pinnix d/b/a Pinnix Business Services* (Franklin Co. C.P. 2008), Case No. 07CVH08-10491(PIF# 2726); *State of Ohio ex rel. Dann v. American Housing Authority, Inc.* (Lucas Co. C.P. 2008), Case No. CI-0200705443 (PIF# 2676); *State of Ohio ex rel. Petro v. AAA All Ohio Roofing, et al.* (Franklin Co. C.P. 2003), Case No. 02CVH022119 (PIF# 2152); *State ex rel. Montgomery v. Bayview Group, Inc.* (Franklin Co. C.P. 2003), Case No. 97CVH12 10749 (PIF# 1727).

39. Plaintiff has suffered damages due to the illegal and deceptive acts in violation of the Ohio Consumer Sales Practices Act in that:

- She paid fees that were both illegal and were not in exchange for any services of value.

- She quit paying her creditors upon the advice of Defendant's representatives and the many misrepresentations that were made to her described in the Complaint.

- As a result, her creditors exercised their right to the default interest rate accelerating the balances owed by enormous amounts to be determined at trial.

- She suffered mental and emotional hardship, mental and emotional stress, and anxiety.

### Count Two:
### (Violations of the Ohio Credit Services Organizations Act)

40. Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

41. Defendant is a credit service organization as defined by R.C. § 4712.01(C)(1) in that Defendant accepted money in order to improve Plaintiffs' credit record and gave advice in connection with doing so.

42. Plaintiff is a buyer as defined by R.C. § 4712.01(A) in that she was solicited and purchased the services of Defendant.

43. Defendant has failed to register as a credit services organization with the Ohio Division of Financial Institutions in violation of R.C. § 4712.02(A).

44. Pursuant to R.C. §4712.11(A), Defendant's violation of R.C. § 4712.02(A) constitutes unfair or deceptive acts or practices in violation of R.C. § 1345.02.

45. Plaintiff has suffered damages due to the illegal and deceptive acts in violation of the Ohio Credit Services Organization Act in that:

- she paid fees that were both illegal and were not in exchange for any services of value.

- she quit paying her creditors upon the advice of Defendant's representatives and the many misrepresentations that were made to her described in the

9

Complaint.

- As a result, her creditors exercised their right to the default interest rate accelerating the balances owed by enormous amounts to be determined at trial.

- She suffered mental and emotional hardship, mental and emotional stress, and anxiety.

## Count Three:
## (Violations of the Credit Repair Organizations Act)

46. Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

47. The Credit Repair Organizations Act was enacted to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services and to protect the public from unfair or deceptive advertising and business practices by credit repair organizations. 15 U.S.C. § 1679(b). The CROA provides that a credit repair organization:

   a. May not charge or receive any money or other valuable consideration for services which the credit repair organization has agreed to perform before such service is fully performed, 15 U.S.C. § 1679(b);

   b. May not provide services without a written and dated contract that includes a full and detailed description of the services to be performed and other terms and conditions set forth in 15 U.S.C. §§ 1679d(a)(1), 1679d(b);

   c. Must provide to the consumer, before any contract or agreement between the consumer and the credit repair organization is executed, the written statement set forth in Section 405(a) of CROA concerning consumer credit

10

        file rights under state and federal law and the right to cancel a contract with a credit repair organization, 15 U.S.C. § 1679c; and

   d. Must allow a consumer to cancel any contract with the credit repair organization without penalty or obligation if the consumer notifies the credit repair organization of the consumer's intention to cancel before midnight of the third business day after the date the contract between the consumer and the credit repair organization is executed, 15 U.S.C. § 1679e.

48. Defendant is "credit repair organizations" as that term is defined in the Credit Repair Organizations Act ("CROA"), because they use instrumentalities of interstate commerce to sell, provide, or perform (or represent that such defendant can or will sell, provide, or perform) a service for the express or implied purpose of improving a consumer's credit record, credit history, or credit rating, and this service is offered in return for the payment of money. 15 U.S.C. § 1679a(3).

49. Defendant received money prior to fully performing its services, and failed to provide any of the proper disclosures, contracts, or right to cancel forms.

50. Defendant's conduct as alleged in Count Three of this Complaint violates the Credit Repair Organizations Act, and the Defendants are liable for these violations.

51. Plaintiff has suffered damages due to the illegal and deceptive acts in violation of the Credit Repair Organization Act in that:

- She paid fees that were both illegal and were not in exchange for any services of value.

- She quit paying her creditors upon the advice of Defendant's representatives and the many misrepresentations that were made to them described in the

Complaint.

- As a result, her creditors exercised their right to the default interest rate accelerating the balances owed by enormous amounts to be determined at trial.

- She suffered mental and emotional hardship, mental and emotional stress, and anxiety.

## Count Four:
### (Fraud / Fraud in the Inducement)

52. Plaintiff repeats, realleges, and reincorporates by reference all of the foregoing paragraphs.

53. Plaintiff specifically relied on the representations, misrepresentations, non-disclosures and implied representations described in Paragraphs 9 through 32 when making the determination to enter into a contract or continue using the services of Defendant.

54. Defendant, through representations, websites, and the Agreement create the appearance that Plaintiff is entering into an agreement that will greatly reduce her outstanding debts.

55. Defendant engaged in the unlawful conduct previously alleged with the actual and/or imputed knowledge of the unlawful conduct.

56. Defendant knowingly engaged in such conduct with the purpose of inducing payment from Plaintiff.

57. Plaintiff have been injured by the wrongful and fraudulent conduct of Defendant and have been damaged in an amount to be established at trial, as well as entitled to punitive damages in an amount to be established at trial.

## Count Five:
### (Violations of the Telemarketing Sales Rule)

58. Plaintiff repeats, realleges, and reincorporates by reference all of the foregoing paragraphs.

59. The Telemarketing Sales Rule ("TSR") was promulgated for the explicit purpose of preventing consumer harm from debt relief operations like the venture of the Defendant in this case.

60. The TSR, 16 C.F.R. § 310.2(m), defines "debt relief service" as "any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payments or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector."

61. The TSR, 16 C.F.R. § 310.2(dd), defines "telemarketing" as "a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call."

62. The TSR, 16 C.F.R. § 310.2 (aa), defines "seller" as "any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration."

63. The TSR, 16 C.F.R. § 310.2 (cc), defines "telemarketer" as "any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor."

64. Defendants are "sellers" or "telemarketers" of "debt relief services", who engages in "telemarketing", as defined in the TSR.

65. The TSR, 16 C.F.R. § 310.4 (a)(5)(i), provides that a seller or a telemarketer may

not request or receive payment of any fee or consideration for any debt relief service until and unless among other things, "the seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer" and "the customer has made at least one payment" pursuant too such an agreement or plan.

66. The TSR, 16 C.F.R. § 310.4(a)(5)(ii), provides that a seller or a telemarketer may request or require customers to place funds in an account to be used for the debt relief provider's fees and for payments to creditors or debt collectors in connection with the renegotiation or settlement of a debt, provided that, among other things: the customer owns the funds held in the account and is paid interest on the account" and "the customer may withdraw from the debt relief service at any time without penalty and must receive all funds in the account, other that funds earned by the debt relief service in compliance with § 310.4(a)(5)(i)(A) through (C), within seven (7) business days of the consumer's request."

67. The TSR, 16 C.F.R. § 310.3(a)(2)(ii), prohibits a seller or telemarketer from misrepresenting, directly or by implication, in the sale of goods or services, any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of the sales offer.

68. The TSR, 16 C.F.R. § 310.3(a)(2)(iii), prohibits a seller or telemarketer from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer.

69. The TSR, 16 C.F.R. § 310.3(a)(2)(x), prohibits a seller or telemarketer from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect

of any debt relief service.

70. In the course of telemarketing debt relief services, Defendant has requested and received payment of fees from Plaintiffs for debt relief services before renegotiating, settling, reducing, or otherwise altering the terms of his debts. Defendant requested and received payment of these fees prior to Plaintiffs making at least one payment pursuant to any settlement agreement, debt-management plan, or other valid contractual agreement between Plaintiffs and their creditors.

71. Therefore, Defendant's act or practices violate the TSR, 16 C.F.R. § 310.4(a)(5)(i), and are abusive acts or practices in telemarketing.

72. Plaintiff was charged advances fees for Defendant's debt relief services.

73. Therefore, Defendant's representations as described herein violate the TSR, C.F.R. § 310.3(a)(2)(ii) and (x), and are deceptive acts or practices in telemarketing.

74. In numerous instances, in connection with advertising, marketing, promoting, offering for sale, or sale of debt relief services, Defendant represented to Plaintiff directly or indirectly, expressly or by implication, that her total debt amount would be reduced by up to 50%.

75. In fact, Defendant does not have a track record of consistent debt reduction of this degree, if any at all.

76. Therefore, Defendant's representations as described herein violate the TSR, C.F.R. § 310.3(a)(2)(iii) and (x), and are deceptive acts or practices in telemarketing.

77. In addition, Defendant and its representatives in making its savings claims (amounts of monies s would save by using Defendant's services) did not disclose the following in violation of the TSR:

- State the savings was based on the Plaintiff debt when she signed up for the program.
- Include the impact of the Defendant's fees on their claimed savings to the Plaintiff.
- In calculating the results over time, did not include customers who dropped out or otherwise failed to complete the program.

## Count Six
### (Breach of Contract)

78. Plaintiff repeats, realleges, and reincorporates by reference all of the foregoing paragraphs.

79. Defendant entered into a contract with Plaintiff and represented it would eliminate Plaintiff's debt.

80. Defendant further provided advice and explanation on the Fair Credit Reporting Act, the Federal Trade Commission Act, the Truth in Lending Act, and the Fair Debt Collection Practices Act.

81. Defendant cite the statutes listed in the prior paragraph as authority for its 'Debt Validation Services' though it is not clear how the Defendant would eliminate defendant's debt through the statutes listed in paragraph 86.

82. Defendant did not perform its obligations pursuant to the contract as agreed as no debts of Plaintiff were eliminated.

83. Plaintiff paid Defendant pursuant to the contract as agreed.

84. Plaintiff has been damaged by Defendant's non-performance and resulting breach of the contract.

85. As such, Plaintiffs is entitled to damages for the breach of contract.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Teresa Klaus, prays this Court grant the following relief:

16

1. ISSUE an order declaring that the Defendant has engaged in acts and practices in violation of the Consumer Sales Practices Act, R.C. § 1345.01 et seq., the Debt Adjustment Companies Act, R.C. § 4710.01 et seq., the Ohio Credit Services Organization Act R.C. § 4712.01, et seq., the Credit Repair Organization Act 15 U.S.C. § 1679, et seq. and the Telemarketing Sales Rule 16 C.F.R. § 310, et seq.

2. ISSUE a Permanent Injunction enjoining the Defendant, its agents, servants, employees, successors or assigns, and all persons acting in concert and participation with it, directly or indirectly, through any corporate device, partnership, or other association, under this or any other name, from engaging in the acts and practices which Plaintiff complains in the State of Ohio until complying with the laws of the State of Ohio and satisfaction of any monetary obligations to Plaintiff.

3. GRANT judgment against the Defendant in the amount of three times the actual damages or $200.00 for each unlawful act specified, whichever is greater, pursuant to R.C. § 1345.09(B).

4. GRANT judgment against the Defendant for common law fraud in an amount of damages in excess of $25,000.00.

5. GRANT judgment against the Defendant in excess of $50,000.00 for violations of the Telemarketing Sales Rule 16 CFR§ 310, et seq.

6. GRANT statutory damages for violations of the Credit Repair Organization Act 15 U.S.C. § 1679g.

7. GRANT statutory damages for violations of the Ohio Credit Services Organization Act R.C. § 4712.10.

8. GRANT judgment against the Defendant in excess of $25,000.00 for its breach of

contract with Defendants.

9. Costs and reasonable attorney fees, pursuant to R.C. § 1345.09(F)(2).

10. GRANT punitive damages.

11. GRANT such other relief as this Court deems to be just, equitable and appropriate.

                Respectfully Submitted:

*/s/ Jeremiah E. Heck*
Jeremiah E. Heck (0076742)
David B. Schultz (0077281)
Luftman Heck & Associates LLP
6253 Riverside Drive, Suite 200
Dublin, Ohio 43017
Phone: (614) 224-1500
Fax: (614) 224-2894
dschultz@lawlh.com
*Attorney for Plaintiffs*

**DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff, Teresa Klaus, demands trial by jury in this action.

*/s/ Jeremiah E. Heck*
Jeremiah E. Heck (0076742)